UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

  Plaintiff,

v.

D-04 ERICK MANNERS,

  Defendant.
               /

Case No. 06-20465

Honorable Nancy G. Edmunds

**OPINION AND ORDER DENYING DEFENDANT ERICK MANNERS'S MOTIONS TO SUPPRESS EVIDENCE [1088, 1086]**

  Defendant Erick Manners (D-04) is charged in multiple counts of a Fifty-Count Second Superseding Indictment, including Counts Twenty-Two and Fifty-One, charging Defendant Manners with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g), and seeking forfeiture of firearms pursuant to 18 U.S.C. § 924(d). This matter came before the Court on Defendant's motions for an evidentiary hearing and order suppressing evidence seized from him on August 30, 2006 and statements he made on that same date. Defendant has filed two motions to suppress. The first motion challenges the affidavit submitted in support of a search warrant [1088]. The second motion argues that a firearm seized from Defendant Manners and statements he made on August 30, 2006 should be suppressed because he was unlawfully detained, frisked, and questioned without *Miranda* warnings [1086]. An evidentiary hearing was held on the second motion on February 24, 2010. The Court fully credits the testimony of the law enforcement officers at that hearing. For the reasons stated below, Defendant's motions to suppress are DENIED.

**A. Motion to Suppress Challenging Search Warrant Affidavit**

The Court first addresses Defendant's motion to suppress [1088] that challenges the affidavit submitted in support of a warrant to search residential property located at 5824 Jackson Street, Taylor, Michigan, and rented by Co-Defendant Michael Cicchetti. Similar to Defendant Cicchetti's motion to suppress, Defendant Manners argues that the affidavit lacks probable cause and the search warrant is overly broad. The Government responds that (1) an evidentiary hearing is not necessary on this motion; and (2) Defendant's motion should be denied because he lacks standing to challenge the warrant to search the property located at 5824 Jackson Street. The Government is correct on both points.

Fourth Amendment rights are personal and do not extend to Co-Defendants. *United States v. Williams*, 354 F.3d 497, 511 (6th Cir. 2003). Defendant Manners has not argued that he has standing to challenge the search of 5824 Jackson Street. Accordingly, Defendant's motion to suppress [1088] is DENIED.[1]

**B. Motion to Suppress Challenging Detention, Frisk, and Questioning**

The Court now addresses Defendant's motion arguing that a firearm seized from him and statements he made on August 30, 2006 should be suppressed because he was unlawfully detained, frisked, and questioned without *Miranda* warnings when he drove his car into the driveway at 5824 Jackson Street just as officers were about to execute a search warrant [1086]. An evidentiary hearing was held on February 24, 2010, and

---

[1] Earlier in the February 24, 2010 hearing, the Court had denied Defendant Cicchetti's motion to suppress evidence seized during the August 30, 2006 search of the residential property located at 5824 Jackson Street, Taylor, Michigan, finding that the affidavit submitted in support of the search warrant established probable cause and was not overly broad.

testimony was provided by Special Agent Brzezinski, Lt. Ray Collins, Det. Sergeant William Terry, and Defendant Erick Manners.

## I. Facts

### A. Testimony of Special Agent Brzezinski

On August 30, 2006, law enforcement officers had obtained a search warrant for the rented residence of Defendant Michael Cicchetti located at 5824 Jackson Street, Taylor, Michigan. The search was part of an on-going investigation of the Highwaymen Motorcycle Club and suspected vehicle thefts. The officers had assembled in the vicinity of that address, preparing to execute the search warrant. Before the search began, however, Agent Brzezinski observed a Ford Explorer enter the driveway at 5824 Jackson Street. He recognized the driver of the Explorer as Defendant Erick Manners. Agent Brzezinski knew Defendant Manners to be a member of the Highwaymen and that he had a reputation for violence. For those reasons, the Agent watched Defendant Manners to see what he would do.

He observed Defendant Manners siting in his vehicle for approximately ten to fifteen minutes. The search team then began to initiate execution of the warrant. Agent Brzezinski, along with Lt. Ray Collins, and Det. Sgt. Terry, approached Defendant Manners's vehicle with their guns drawn. Agent Brzezinski could see Defendant Manners in the Explorer, Defendant appeared to be "out of it," intoxicated, and sleeping. He saw a bottle of Jack Daniels alcohol on the front seat.

Agent Brzezinski testified that, for safety reasons, Lt. Collins and Det. Sgt. Terry removed Defendant from the car, put him on the ground, handcuffed him and patted him down. They asked him if he had a firearm. When Defendant was rolled over by these

officers, Agent Brzezinski saw a gun on the ground.  He did not know where it came from but did not see it on the ground earlier.

On cross-examination, Agent Brzezinski admitted that he had prepared a report regarding Defendant Manners, the report stated that Lt. Collins had retrieved a gun out of Defendant Manners's front left pocket, but he did not see Lt. Collins reach in Defendant's pocket and get out a firearm.  Agent Brzezinski testified that all of this was accurate.  He also testified that he did not see Defendant Manners commit an offense before he was removed from his car.

### B.  Testimony of Lt. Ray Collins

Lt. Collins is with the Michigan State Police.  On August 30, 2006, he was involved in the investigation of the Highwaymen and stolen vehicles and was present at 5824 Jackson Street for the execution of the search warrant for that residential property.  While on the scene, he saw a Ford Explorer arrive at 5824 Jackson Street and park in the driveway.  He, along with the other officers, approached the Explorer with their guns drawn.  Lt. Collins saw a fifth of Jack Daniels on Defendant's lap while he was in the vehicle.  Defendant Manners was asked to show his hands three times before he complied by slowing raising them.  Defendant Manners was ordered from the vehicle.  Lt. Collins and Det. Sgt. Terry were the officers who opened the door, pulled Defendant Manners from the vehicle, put him face-down on the ground, handcuffed him behind his back, and then asked him if he had any weapons.  Defendant Manners was asked if he had a weapon two or three times before he responded, "Yeah, a pistol."  The officers then rolled Defendant Manners to his left side, exposing his right front pocket; and, as they rolled Defendant, Lt. Collins saw a handgun fall from Defendant's right front pocket onto the ground.

4

On cross-examination, Lt. Collins testified that he asked "safety-related" questions only; i.e., "Do you have any weapons on you?" He admitted that he did not provide *Miranda* warnings before asking Defendant if he had any weapons.

### C. Det. Sgt. William Terry's Testimony

Det. Sgt. Terry is with the Michigan State Police. He was present on August 30, 2006 to assist with the execution of the search warrant for 5824 Jackson Street. Before the search began, he saw a Ford Explorer pull into the driveway. He was one of the officers that approached the vehicle, and helped remove Defendant from his car for safety reasons during the execution of the search warrant. Defendant Manners appeared "stunned and shocked" and was "somewhat compliant." Defendant was asked to show his hands, was taken to the ground, and was handcuffed. Someone asked if he had a weapon, and Defendant Manners did not reply. Det. Sgt. Terry assisted in rolling Defendant over, and he saw a gun fall out of his front pant pocket.

### D. Defendant Manners's Testimony

Defendant Manners testified that on August 30, 2006, he drove up and parked in the driveway at 5824 Jackson Street. He saw officers approach his car with their guns drawn. They ordered him out of his vehicle, and then pulled him out. They handcuffed him when he was on the ground. While on the ground, he was patted down. The officers felt a gun, and asked him if he had a gun. He told them "Yes," and they took it.

On cross-examination, Defendant Manners admitted that he had been drinking from the fifth of Jack Daniels observed in his car on August 30, 2006.

## II. Analysis

Defendant's motion to suppress argues that his Fourth Amendment rights were violated and thus the gun seized as a result of his unlawful detention must be suppressed. Defendant further argues that any statements obtained from him without the benefit of *Miranda* warnings must also be suppressed. At the hearing, Defendant argued that his detention, frisk and questioning on August 30, 2006 during the execution of the search warrant at 5824 Jackson Street were (1) not justified by *Terry v. Ohio*, 392 U.S. 1 (1968), because the officers did not have a reasonable suspicion that he was involved in criminal activity, and (2) not permissible under *Michigan v. Summers*, 452 U.S. 692, 702-03 (1981), because Defendant Manners was not a resident of the property being searched and was not present in that residence during the execution of the search warrant. As clarified at the February 24, 2010 hearing, the Government is not relying on *Terry* to justify the officers' challenged actions. Rather, it is arguing that the detention, frisk for weapons, and questions about weapons were all permissible under *Michigan v. Summers* and Sixth Circuit decisions applying that decision.

It is well-settled that the Fourth Amendment prohibits a law enforcement officer from detaining an individual unless the officer has a reasonable suspicion that the individual has been involved in criminal activity. *See generally Terry v. Ohio*, 392 U.S. 1, 20-22 (1968). The Government, however, has clarified that it is not arguing that it detained and frisked Defendant Manners under *Terry*. Rather, it relies on the authority first recognized in *Michigan v. Summers*, 452 U.S. 692, 702-03 (1981), that law enforcement officers have a limited authority to detain occupants of a premises while a proper search is being conducted.

"In *Summers*, police approaching a house to execute a search warrant saw the owner of the house leaving and detained him for the duration of the search. The Court reasoned that such a detention was permissible even without probable cause, because inasmuch as it involved a limited detention at the individual's own residence it was not very intrusive, and because such a detention served several important police interests." *Burchett v. Kiefer*, 310 F.3d 937, 943 (6th Cir. 2002) (internal citations omitted). Those important police interests were identified as: (1) preventing flight, (2) minimizing the "risk of harm to officers and others," and (3) facilitating the "orderly completion of the search." *Id.* (citing *Summers*, 452 U.S. at 702-03).

The Sixth Circuit has "extended police officers' powers under *Summers* in two important respects." First, the holding in *Summers* has been extended to include "nonresidents who are present at the scene of a search when police arrive" because "allowing police to detain such individuals would further *Summers's* goals of preventing flight and minimizing the risk to officers." *Burchett*, 310 F.3d at 943. "Second, in *United States v. Bohannon*, 225 F.3d 615, 616 (6th Cir. 2000)," the Sixth Circuit "ruled that officers could also detain individuals who arrive at the scene of a search, even if they were not inside the residence or present when police first arrived." *Id.* "In *Bohannon*, officers were concluding their search and leaving the scene when a car pulled into the driveway of the residence at issue and two individuals walked from the car toward the residence. The officers asked the first of them for identification and, when the other engaged in nervous behavior, patted down the second, found drugs, and arrested him. Noting that the policies underlying *Summers* . . ., especially officer safety, applied equally to the detention of

individuals arriving at a search scene, the court ruled that such a detention was not a violation of the Fourth Amendment." *Id.* (internal citations omitted).

The facts in *Bohannon* are close to those presented here. Defendant Manners arrived at the scene of a search just as it was about to begin. Agent Brzezinski, who was conducting surveillance of the residence to be searched, recognized Defendant Manners as a member of the Highwaymen with a reputation for being dangerous. Consequently, once the rest of the search team was prepared to execute the search warrant, Agent Brzezinski and other officers approached Defendant Manners and sought to minimize the risk of harm to the officers conducting the search. Defendant Manners was initially non-compliant with the officers' orders to show them his hands. After two or three requests, he slowly raised his hands. Agent Brzezinski testified that Defendant Manners appeared to be intoxicated and "out of it." He and Lt. Collins saw a fifth of Jack Daniels on the front seat of his vehicle. When Defendant Manners did not comply with the officer's directions to step out of his vehicle, he was removed from that vehicle, placed face-down on the ground, handcuffed with his hands behind his back, patted down and asked if he had any weapons. The Government argues that, given these facts, and the possible danger Defendant presented to the safety of officers on the scene, "it would have been foolhardy for an objectively reasonable officer not to conduct a security frisk under the circumstances." *Bohannon*, 225 F.3d at 617 (quoting *United States v. Patterson*, 885 F.2d 483, 485 (8th Cir. 1989)). Under this line of authority, the law enforcement officers were justified in detaining and frisking Defendant Manners so as to minimize the risk of harm he presented.

"If the detention of [the defendant] was constitutional, the question becomes whether the frisk of [that defendant] was authorized under the Fourth Amendment." *Id.* "A law

enforcement agent may conduct a pat-down search to find weapons 'where he has reason to believe that he is dealing with an armed and dangerous individual.'" *Id.* (quoting *Terry*, 392 U.S. at 27). "The issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Id.* (internal quotation marks and citation omitted). In light of the testimony presented by Agent Brzezinski, Lt. Collins, and Det. Sgt Terry, the pat-down of Defendant was authorized under the Fourth Amendment.

Defendant Manners also seeks suppression of his response, "Yeah, a pistol," to the officer's questions whether he had a weapon. At that time, he was on the ground and handcuffed. It is well-established that *Miranda* warnings are required for custodial interrogations. It is not disputed that this was a custodial interrogation. Rather, the Government argues that the public safety exception to *Miranda* announced in *New York v. Quarles*, 467 U.S. 649, 659 (1984), applies. This Court agrees.

"[W]hen officers ask 'questions necessary to secure their own safety or the safety of the public' as opposed to 'questions designed solely to elicit testimonial evidence from a suspect,' they do not need to provide the warnings required by *Miranda*." *United States v. Williams*, 483 F.3d 425, 428 (6th Cir. 2007) (quoting *Quarles*, 467 U.S. at 659). "The public safety exception applies 'when officers have a reasonable belief based on articulable facts that they are in danger.'" *Williams*, 483 F.3d at 428 (quoting *United States v. Talley*, 275 F.3d 560, 563 (6th Cir. 2001)). The reasonableness of an officer's belief is based on the Court's "evaluation on objective facts rather than the officer's subjective state of mind" and "takes into consideration a number of factors, which may include the known history and characteristics of the suspect, the known facts and circumstances of the alleged crime, and

the facts and circumstances confronted by the officer when he undertakes the arrest." *Id.* At a minimum, a finding that an officer has a reasonable belief that he is in danger requires that "he must have reason to believe (1) that the defendant might have (or recently have had) a weapon, and (2) that someone other than police might gain access to that weapon and inflict harm with it. The public safety exception applies if and only if both of those two conditions are satisfied and no other context-specific evidence rebuts the inference that the officer reasonably could have perceived a threat to public safety." *Id.*

The public safety exception applies here because (1) Defendant had the reputation for being dangerous, appeared to be intoxicated, was not complying with the officer's simple commands, and a pat-down revealed what appeared to be a weapon; and (2) Defendant might gain access to that weapon and harm the officers if it was not removed from his possession. The limited, safety-related questions by the officers here do not require the suppression of Defendant Manners's statement that he had a pistol.

### III. Conclusion

For the above-stated reasons, Defendant Manners's motions to suppress are DENIED.

        s/Nancy G. Edmunds
        Nancy G. Edmunds
        United States District Judge

Dated: February 25, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on February 25, 2010, by electronic and/or ordinary mail.

        s/Carol A. Hemeyer
        Case Manager